FILED
99 JUL 22 AM 9:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 22 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANET M. MOORE,         }<br>                         }<br>    Plaintiff,         }<br>                         }     CIVIL ACTION NO.<br>    v.                   }<br>                         }     98-AR-1795-S<br>SOUTHERN NUCLEAR OPERATING }<br>CO., INC.,               }<br>                         }<br>    Defendant.           } | |

### MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Southern Nuclear Operating Co., Inc. ("Southern Nuclear"). Southern Nuclear seeks judgment as a matter of law on all claims asserted against it by plaintiff, Janet M. Moore ("Moore"). Specifically, Southern Nuclear seeks summary judgment on Moore's claims that it violated the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 by terminating her employment. For the reasons hereinafter stated, the motion is due to be granted.

### Background

Southern Nuclear is licensed by the Nuclear Regulatory Commission ("NRC") to operate three nuclear power generating plants, two in Georgia and one in Alabama. The NRC has promulgated regulations that require all licensees, including Southern Nuclear, to perform background checks on every potential employee as a condition of employment. 10 C.F.R. §

73.56(b)(2)(i). This background check includes inquiries into the individual's true identity, education, employment history, credit history, criminal history, military background, and other information relating to the individual's character and reputation. *Id*. The primary objective of these regulations is to ensure that only individuals of a trustworthy and reliable character, who pose no unreasonable risk to the general public, are allowed access to nuclear power plants.

In an effort to comply with the NRC regulations, Southern Nuclear implemented a policy in 1992 that requires all employees to report custodial arrests to their immediate supervisor or to the Corporate Security Department ("CSD") at Southern Nuclear. According to a follow-up intra-company correspondence, "'[c]ustodial' generally means that a person was incarcerated, or taken to jail, the courthouse, etc. in conjunction with an arrest." Depo. of Pl., Exhib. 1. The same document reminded Southern Nuclear employees that they were also obligated to report any convictions resulting from reportable arrests. In 1993, another intra-company communication reminded employees of their obligation to report "any arrest that might impact on his/her trustworthiness." Depo. of Pl., Exhib. 6, p. 19. In 1996, the policy was restated to provide, in pertinent part:

> The term "custodial arrest" means:
>
> - An arrest and incarceration associated with a criminal offense.
> - Arrest and detainment by a law enforcement official for an offense in which the employee is released after making a bond.
> - Arrest and escort by a law enforcement official to a jail, courthouse, or other public building to be bonded for a future court appearance.
>
> The reporting requirement does not apply to minor traffic citations . . .

> **Employees uncertain about reportability of an arrest incident must report the information so it can be evaluated by supervision.**
>
> \*\*\*\*
>
> The arrest reporting policy applies to all employees. Non-compliance with this policy shall result in disciplinary action up to and including termination of employment.

Depo. of Averett, Ex. 8 (emphasis supplied). Arrest information is assessed by the CSD, who make a determination as to whether the arrest implicates the employee's reliability and trustworthiness. If an individual is deemed by the CSD to be untrustworthy, the CSD may revoke the employee's access authorization. While the CSD does not directly make employment decisions, the revocation of access authorization prevents an employee from doing his or her job, resulting in the ultimate termination of the employee.

Moore is an African-American woman who became an employee of Southern Nuclear in 1984.[1] Moore received approval on her job appraisals and was promoted several times during her tenure at Southern Nuclear. At the time of the events in question, Moore worked in Procurement.

In May of 1997, Moore informed her immediate supervisor, Jim Britain ("Britain") that she had been diagnosed with breast cancer and would be needing some time off for biopsies, surgery, and chemotherapy treatments. Moore requested and received considerable amounts of time off, including two extended periods of leave. Moore presents no

---

[1] From 1984 through 1989 or 1990, Moore actually worked for one of Southern Nuclear's affiliated companies, however various documents in this case indicate that the parties agree that Moore's employment relationship with Southern Nuclear began in 1984.

evidence to indicate that she was ever denied a request for time off, or denied any requested accommodation. It is undisputed that Moore was fully capable of performing, and did in fact perform, all duties associated with her position at all times.

While Moore was out on an extended period of medical leave, Southern Nuclear's CSD was contacted by the Shelby County Sheriff's Department in connection with an investigation of credit card fraud allegedly committed by Moore. The CSD was informed that the Sheriff's Department and the United States Secret Service were conducting an ongoing investigation of Moore's alleged credit card fraud and use of a Social Security number, and that Southern Nuclear's assistance was requested in scheduling an interview with Moore. The CSD informed Jim Averett ("Averett"), Southern Nuclear's Vice-President of Administrative Services of the telephone inquiry. Averett directed the CSD to inform the authorities that Moore would return from medical leave on January 19, 1998.

When Moore returned to work on January 19, 1998, she was taken for a routine drug test conducted due to her return from extended medical leave. She was then taken to a room where she was interviewed by personnel from the Sheriff's Department and the Federal Bureau of Investigations ("FBI"). Following this interview, Moore was interviewed by a member of Southern Nuclear's CSD. During the CSD interview, Moore admitted that, in November of 1995, she pled guilty to and was convicted of credit card fraud in federal court. She also admitted that she had appeared in Homewood Municipal Court in 1994 for writing a bad check. Moore acknowledged that, prior to both incidents, she was fully aware

4

of Southern Nuclear's policy regarding employee reporting of arrests, but that she did not report either incident to her supervisor or to the CSD. Moore claims that she did not report the incidents because she did not think that either qualified as a "custodial arrest," and, with regard to the credit card fraud, she was ashamed of what she had done and was afraid of losing her job.

After the CSD interview, Moore was placed on administrative leave while Southern Nuclear conducted its own investigation of the arrests to determine whether the arrests, and/or Moore's failure to report them, implicated her trustworthiness. The CSD's investigation revealed that, contrary to Moore's firmly held belief that she these incidents did not involve "custodial arrests," Moore had in fact been arrested (via letter and voluntary surrender) in connection with the worthless check charge, had been finger-printed, photographed, posted bond, appeared in court, and had been convicted. Moore had also been arraigned before a magistrate, made an unsecured signature bond, and had been convicted of credit card fraud. Based on this information, the CSD concluded that Moore was obligated to report these arrests, that she did not report the arrests, and that she failed to follow the company policy requiring her to report the arrests to her supervisor if she had any doubt about their reportability  The CSD ultimately concluded that the information affected Moore's reliability and trustworthiness.

The CSD's conclusion was communicated to Averett, who, with input from Britain (Moore's immediate supervisor), and David Varner (Britain's immediate supervisor), decided to terminate Moore's employment. The comprehensive file assembled in connection with Moore's employment

5

status reveals that imposing a Decision Making Leave ("DML") on Moore was considered and rejected as an alternative to termination. A DML is issued when Southern Nuclear determines that an employee failed to report a reportable arrest. In Moore's case, the personnel file reveals that DML option was rejected because Moore had failed to report not one, but **two** arrests.

Upon receiving notice that Southern Nuclear had terminated her employment, Moore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been terminated because of her race, black, in violation of Title VII and § 1981, and her disability, in violation of the ADA. Moore received her Right to Sue letter and timely filed her complaint.

**Discussion**

Southern Nuclear is entitled to judgment of law on all counts asserted in Moore's complaint.

With regard to the ADA claim, Moore has completely failed to present any evidence that she is "disabled" as that term is defined by the ADA and several recent United States Supreme Court decisions. *See Sutton v. United Air Lines, Inc.*, 1999 WL 407488 (U.S.); *Murphy v. United Parcel Service, Inc.* 1999 WL 407472 (U.S.). She has set forth no evidence suggesting that her medical condition, breast cancer, substantially limits one of life's major activities. Breast cancer is not a *per se* disability. *See Ellison v. Software Spectrum, Inc.* 85 F.3d 187 (5th Cir. 1996). Because Moore cannot establish a *prima facie* case

of disability discrimination, her ADA claim fails as a matter of law.[2]

Southern Nuclear is also entitled to judgment as a matter of law on Moore's claims that it violated Title VII and § 1981 because Moore cannot establish a *prima facie* case of racial discrimination. While she is a member of a protected group who was qualified for her position and who suffered an adverse employment decision, the comparators she presents do not suggest that she received different treatment than similarly situated employees. Leon Rusty Cobb, a white employee who received a DML after failing to report an arrest for disorderly conduct after being arrested in a bar-room brawl, is not a similarly situated employee because he failed to report only **one** arrest. Moore failed to report two. Moreover, Moore's arrests involve crimes that, by their very nature, involve deceit and thus directly affect her trustworthiness. The only other person who failed to report two arrests, Ladon Lewis, was similarly discharged.

Even assuming that Moore could establish a *prima facie* case, her claims for race discrimination would still fail because she presents no evidence sufficient to show that Southern Nuclear's proffered explanation for the employment decision is merely a pretext for racial discrimination. Purportedly in support of her racial discrimination claim, Moore notes that complaints of sexual harassment made by female

---

[2] The court notes that Moore's *prima facie* case also fails because Moore has not shown that she was otherwise qualified for the position because she cannot show that she met Southern Nuclear's criteria for reliability and trustworthiness. Furthermore, Moore's ADA claim would fail even if she did establish a *prima facie* case because she cannot show that Southern Nuclear's proffered reason for her termination is a pretext for disability discrimination.

employees against white managers were not taken seriously. The court fails to see the connection between sexual harassment and a claim for race discrimination -- Moore has never alleged that the termination decision was based on her gender. Moore also maintains that there was a general feeling that whites received more favorable treatment than blacks in the office. A "general feeling" is not evidence. Lastly, Moore makes reference to a comment, made several years before Moore's termination by an individual totally uninvolved in her termination decision, suggesting that employees who had "blonde hair and blue eyes" had an easier time getting promotions from Averett. Moore interprets this comment as suggesting racial bias on the part of Averett. This statement, however, is simply inadequate to undermine the wealth of evidence compelling the conclusion that Moore was terminated because she had a criminal history of offenses that, by the very nature, impugned her reliability and trustworthiness, and because she failed to report these offenses as required by Southern Nuclear's policy – a policy made to ensure the company's compliance with obligations imposed by federal regulations.

For these reasons, Southern Nuclear is entitled to judgment as a matter of law. An appropriate order granting the motion for summary judgment and dismissing the action will be separately entered.

DONE this 22nd day of July, 1999.

_/s/ William M. Acker_
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE